# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| ALAN B. CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-1373L |
| v. | ) | (Filed: August 14, 2025) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Alan Carroll owns land adjacent to a railroad corridor in Greensboro, North Carolina (the "City"). He brought this action to secure compensation for the taking of his property arising out of the operation of § 8(d) of the National Trails System Amendments of 1983, 16 U.S.C. § 1247(d) (the "Trails Act"). He alleges that the taking occurred when the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") that prevented the Norfolk Southern Railway (the "Railroad") from consummating the abandonment of a railway easement it enjoyed over his property, thereby blocking the vesting of Mr. Carroll's state law reversionary interest.[1]

The Court has already granted Mr. Carroll partial summary judgment, holding that the government is liable for the taking of his state law reversionary interest. Order, Mar. 18, 2025, ECF No. 25. It found that the material facts were not in dispute, and that, as matter of law, a potential taking of the reversionary interest Mr. Carroll held in the portion of his property subject to the railroad easement began when the NITU issued. See Caldwell v. United States, 391 F.3d 1226, 1236 (Fed. Cir. 2004). Further, when the Railroad and the City entered a trail-use agreement, the NITU extended indefinitely and effected a permanent taking. See id. at 1234. At that point, state law was preempted by operation of the NITU, and the easement was converted to one for recreational use. See Memmer v. United States, 50 F.4th 136, 139 (Fed. Cir. 2022) ("If an agreement is reached, trail use of the right-of-way is authorized and abandonment by the railroad is blocked indefinitely, subject to restoration of the right-of-way for railroad purposes." (citing Castillo v. United States, 952 F.3d 1311, 1315 (Fed. Cir. 2020)); see also Toscano v. United States, 107 Fed. Cl. 179, 187 (2012) (describing how, under state law, attempted conveyance of a railroad easement for recreational trail use would result in the easement being

---

[1] Under North Carolina law, an easement that is limited to railroad purposes cannot be conveyed for use as a recreational trail without extinguishing the easement. See, e.g., Nicholson v. United States, 170 Fed. Cl. 399, 410 (2024); Brown v. United States, 153 Fed. Cl. 318, 331 (2021).

terminated "because the misuse makes it impossible to achieve the easement's original purpose.").

Currently before the Court are the parties' cross motions for partial summary judgment concerning the proper measure of just compensation for the taking of Mr. Carroll's reversionary interest. Mr. Carroll contends that he is due the difference between the value of his parcel unencumbered by the railroad easement and its value encumbered by an easement for recreational use. Pl.'s Cross Mot. for Partial Summ. J., ECF No. 28. The government contends that the proper measure of compensation is the difference between the value of his property with the railroad easement in place, and its value encumbered by the easement for recreational use. Def.'s Mot. for Partial Summ. J., ECF No. 27.

For the reasons set forth below, the Court agrees with Mr. Carroll. It will therefore enter partial summary judgment for Mr. Carroll as to the proper before condition in the measure of just compensation.

## BACKGROUND

The STB regulates "the construction, operation, and abandonment of most railroad lines in the United States." Caldwell, 391 F.3d at 1228. A railroad that wishes to abandon a railroad right-of-way within the STB's jurisdiction "must either: (1) file a standard abandonment application that meets the requirements of 49 U.S.C. § 10903; or (2) seek an exemption, under 49 U.S.C. § 10502." Id.

"Congress," however, "has determined it beneficial to preserve established railroad rights-of-way and to create recreational trails." Memmer, 50 F.4th at 139. It therefore enacted § 8(d) of the Trails Act, 16 U.S.C. § 1247(d). It "provides a mechanism for a rail carrier that intends to abandon or discontinue a rail line to instead negotiate an agreement with a locality or a private entity trail sponsor to convert the railroad's right-of-way into a recreational trail." Memmer, 50 F.4th at 139.

In this case, the Railroad initiated the process of abandoning its rail line on August 26, 2019, by filing a "Verified Notice of Exempt Abandonment." Ex. C, ECF No. 27-3.[2] A few weeks later, on September 13, 2019, the STB published a Notice in the Federal Register granting the exemption and establishing October 13, 2019, as the effective date of the abandonment. Ex. N, ECF No. 12-14.

It is well established that when the STB grants a railroad abandonment authority and the railroad ceases operation, "state law reversionary property interests, if any, take effect." Caldwell, 391 F.3d at 1228–29. The Trails Act, however, provides an alternative to a railroad's abandonment of a right-of-way, through a process known as "railbanking." Id. at 1229. It permits a railroad to negotiate with a state, municipality, or private group to assume responsibility for operating the railroad right-of-way as a recreational trail. Id. "If the railroad and the trail operator

---

[2] The Court adopts the naming convention for exhibits as set forth in the Plaintiff's motion. See Pl.'s Cross Mot. for Partial Summ. J. at vii–viii (Table of Exhibits), ECF No. 28.

indicate willingness to negotiate a trail use agreement, the STB stays the abandonment process and issues a notice allowing the railroad right-of-way to be 'railbanked.'" Id. (citing 49 C.F.R. § 1121.4). "The effect of the notice, if the railroad and prospective trail operator reach an agreement, is that the STB retains jurisdiction for possible future railroad use and the abandonment of the corridor is blocked 'even though the conditions for abandonment are otherwise met.'" Id. (quoting Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 139 (D.C. Cir. 1998)). "Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment—property laws that would 'result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners.'" Id. (quoting Rail Abandonments—Use of Rights-of-Way as Trails–Supplemental Trails Act Procedures, 2 I.C.C.2d 591 (1986)).

In this case, the City filed a request for Interim Trail Use with the STB on September 13, 2019, the same day that the STB published its Notice granting the abandonment exemption and establishing October 13, 2019, as its effective date. Ex. O, ECF No. 12-15; Ex. N, ECF No. 12-14; see also Ex. P, ECF No. 12-16 (the City's modified request).[3] Thereafter, on October 11, 2019, and with the Railroad's consent, Ex. Q, ECF No. 12-17, the STB issued a NITU. See Ex. D, ECF No. 27-4. The NITU precluded the Railroad from abandoning the corridor for 180 days, to allow the parties time to negotiate an interim trail-use agreement. Ex. D; see 49 C.F.R. § 1152.29(a).

As the court of appeals observed in Caldwell, a NITU "operates as a single trigger to several possible outcomes." 391 F.3d at 1234. One such outcome is "a process that results in a permanent taking in the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked." Id.; see also Memmer, 50 F.4th at 139 (observing that when an agreement is reached, "trail use of the right-of-way is authorized and abandonment by the railroad is blocked indefinitely, subject to restoration of the right-of-way for railroad purposes"). That is what happened here.

Thus, on November 8, 2019, the Railroad and the City filed a "Notice of Consummation of Trail Use Agreement" with the STB. Ex. E, ECF No. 27-5. The railroad's easement was then conveyed to the City for interim trail use pursuant to the Trails Act.

## DISCUSSION

## I.    Motions for Summary Judgment

Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under

---

[3] Under STB regulations, if a rail carrier applies for permission to abandon, "any prospective trail sponsor may file a comment indicating an interest 'in acquiring or using a right-of-way of a rail line . . . for interim trail use and rail banking.'" Caquelin v. United States, 959 F.3d 1360, 1363 (Fed. Cir. 2020) (alteration in original) (quoting 49 C.F.R. § 1152.29(a)).

the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994). All significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "Once the moving party has satisfied its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence." Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citing Anderson, 477 U.S. at 248). The court should act with caution in granting summary judgment and may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." Anderson, 477 U.S. at 255.

## II.    Merits

"It is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010); see also Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004) ("It is elementary law that if the Government uses (or authorizes the use of . . .) an existing railroad easement for purposes and in a manner not allowed by the terms of the grant of the easement, the Government has taken the landowner's property for the new use."). Applying this settled law, the Court granted summary judgment to Mr. Carroll with respect to liability based on the following undisputed facts: (1) that Mr. Carroll owned land adjacent to the corridor at issue; (2) that the railroad corridor was owned as an easement for railroad purposes only; (3) that the STB had issued a NITU; and (4) that a trail-use agreement was ultimately reached under which the trail would be converted to use for recreation. See Order, Mar. 18, 2025, ECF No. 25.

The case is now before the Court on the parties' cross motions for summary judgment as to the proper methodology for determining just compensation. The parties agree that the so-called "before-and-after" compensation method applies to cases such as this one, where the property interest that is permanently taken is an easement. See Otay Mesa Prop., L.P. v. United States, 670 F.3d 1358, 1364 (Fed. Cir. 2012). Under that method, the measure of just compensation is "the difference between the value of the property before and after the Government's easement was imposed." Id. (quoting United States v. Va. Elec. & Power Co., 365 U.S. 624, 632 (1961)); see also Rasmuson v. United States, 807 F.3d 1343, 1345 (Fed. Cir. 2015) (applying the same to rails-to-trails cases). The disagreement between the parties concerns whether Mr. Carroll's property should be valued in the "before condition" as encumbered by the railroad easement (as the government argues), or instead, as unencumbered by any easement (as Mr. Carroll contends). Compare Pl.'s Cross Mot. for Partial Summ. J. with Def.'s Mot. for Partial Summ. J.

As Mr. Carroll, emphasizes, this is not really an open question. The judges on this court have consistently held that the "before" condition for valuation purposes is the plaintiff's land unencumbered by any easement—the condition that would have existed if the plaintiff's

4

reversionary interest had not been blocked from vesting by operation of the NITU when the trails agreement was reached—in other words, the condition that would have existed but for the taking. See Whispell Foreign Cars, Inc. v. United States, 106 Fed. Cl. 635, 642–43 (2012) (citing cases); see also Pl.'s Cross Mot. for Partial Summ. J. at 20–25 (citing cases). This compensates plaintiffs for "precisely what the government takes from a landowner." Otay Mesa, 670 F.3d at 1368; see also Preseault v. United States, 100 F.3d 1525, 1550 (Fed. Cir. 1996) (holding that a trail-use agreement results in "a new easement for the new use, constituting a physical taking of the right of exclusive possession that belonged to the [plaintiffs]").

More recently, however, the government has begun to argue that in determining the "before" condition of Plaintiff's property the Court must consider whether the Railroad would have abandoned its right of way if the NITU had never been issued. See, e.g., Hyatt v. United States, 170 Fed. Cl. 417 (2024); Kotis Assocs., LLC v. United States, 176 Fed. Cl. 346 (2025); Collective Edge, LLC v. United States, Nos. 20-34, 20-48, 20-159 (Fed. Cl. May 16, 2024). It contends in this case that the undisputed facts show that it would not have done so.[4] For that reason, the government asserts, the "before" condition should be based on the value of the property still subject to the railroad easement.

The government's new argument lacks merit. The question whether the Railroad would have abandoned the corridor had no NITU been issued concerns "causation principle[s]," i.e., whether the NITU prevented the Railroad from abandoning its right-of-way or whether the Railroad would not have abandoned its line, even without the NITU. Caquelin v. United States, 959 F.3d 1360, 1371 (Fed. Cir. 2020). It is not relevant to the compensation due Mr. Carroll. See id. at 1363 (clarifying that a NITU "does not effect a taking if, even in the absence of a NITU, the railroad would not have abandoned its line (a necessary prerequisite for termination of the easement under state law) during the period of the NITU," and that "in such a case, the NITU takes nothing from the landowner that the landowner would have had in the absence of the NITU").

Moreover, at this juncture, it is undisputed not only that a NITU was issued, but that it set in motion a process that resulted in a trail-use agreement that indefinitely blocked the vesting of Mr. Carroll's state law reversionary interests. The Court agrees with Judge Tapp that a "'but for the NITU' analysis[] is specific to cases where no trail-use agreement has been reached." Hyatt, 170 Fed. Cl. at 428–29. Once a trail-use agreement was reached, the Railroad's intent to abandon

---

[4] The government relies on the Declaration of the Railroad's Director of Real Estate, drafted some three years after the NITU was issued and the trails agreement was reached. Ex. F, ECF No. 27-6 (Decl. of Kristi D. Blair, Director—Real Estate). In it, she states that "[i]f a final trail use agreement had not been reached, [the Railroad] would not have abandoned the [Corridor]," but that "[r]ather, the [Railroad] would have exercised the lesser-included discontinuance authority to preserve the rail corridor for future rail service." Def.'s Mot. for Partial Summ. J. at 11 (quoting Ex. F). It further cites the testimony the Railroad provided during a RCFC 36(b)(6) deposition, which the government argues "confirmed that '[i]n the event that the NITU was not consummated with the city of Greensboro, [the Railroad] intended to withdraw [its] request for abandonment and file for discontinuance of service.'" Id. (quoting Ex. G, ECF No. 27-7 (Blair Dep. at 24:19–22)).

in the hypothetical situation where no NITU was issued is irrelevant, and, as Judge Tapp pointed out, "would further complicate the unnecessarily ambiguous landscape of rails-to-trails cases." Id. at 429.

Finally, the cases that the government cites in its motion do not support the position it is taking in this case. For example, it contends that in Hardy v. United States, 153 Fed. Cl. 287 (2021), Judge Sweeney "[held] the proper before condition was subject to the rail easement as the railroad would not have abandoned in the absence of the NITU." Def.'s Mot. for Partial Summ. J. at 10 (citing Hardy, 153 Fed. Cl. at 296). In fact, Judge Sweeney did not discuss just compensation in the opinion the government cites; to the contrary, her discussion of whether the Railroad would have abandoned its right-of-way if there were no NITU had to do with liability. See generally Hardy, 153 Fed. Cl. at 296–97 (finding that in the absence of the NITU, the Railroad would not have abandoned the portion of the line at issue, and so the government was "not liable for a taking"). Moreover, in discussing just compensation in an earlier opinion in the case, Judge Sweeney expressly stated that measure of just compensation in rails-to-trails cases is "the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad." Hardy v. United States, 141 Fed. Cl. 1, 9 (2018) (quoting Raulerson v. United States, 99 Fed. Cl. 9, 12 (2011)).

The government also relies upon Loveridge v. United States, 174 Fed. Cl. 379 (2024), which it says held that "the before condition must reflect [the] railroad easement and [the] still operating scenic railroad as both 'physical and legal' realities." Def.'s Mot. for Partial Summ. J. at 10 (quoting Loveridge, 174 Fed. Cl. at 396). But in Loveridge, the court observed that in rails-to-trails cases, "one calculates damages by establishing the fair market value of the property absent any easement on the date of the taking—whereby the before value is the value of the entire fee unencumbered." 174 Fed. Cl. at 395. The court nonetheless valued the property in the "before" condition as encumbered by a railroad easement because of the highly unusual facts in the case where the freight railroad had continued to lease its line to a scenic railroad even after it had conveyed its easement for recreational trail use. Id. at 395–99. Because the scenic railroad continued to operate over the line, the court treated the easement as split and held that in the before condition the scenic railroad's easement should be treated as in existence, while the freight railroad's easement should be considered extinguished. Id.

**CONCLUSION**

For the foregoing reasons, Mr. Carroll's cross motion for partial summary judgment, ECF No. 28, is **GRANTED**, and the government's motion for partial summary judgment, ECF No. 27, is **DENIED**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge